SHELBY NATIONAL BANK, ADMINISTRATOR *v.* MILLER.

[No. 1169A200. Filed June 15, 1970. Rehearing denied August 6, 1970. Transfer denied December 29, 1970.]

*Ice Miller Donadio & Ryan,* of Indianapolis, *Phillip W. Brown, Brunner, Brown & Brunner,* of Shelbyville, for appellant.

*C. Wendell Martin, Bredell, Martin & McTurnan,* of Indianapolis, for appellee.

SHARP, J.—This action for wrongful death was brought by the Plaintiff-Appellant, Shelby National Bank, Administrator of the Estate of Ellen L. Bowles, deceased, against the Defendant-Appellee, Hascal D. Miller, by the filing of a complaint in one legal paragraph. The Appellee filed an answer in denial under Rule 1-3 of the Rules of our Supreme Court. By agreement the case was tried before a jury on the issues pertaining to negligence alone.

The Complaint alleged that the Defendant was operating an automobile in a northwesterly direction on Interstate 74 at a point near the bridge crossing Brandywine Creek, at approximately 6:20 o'clock A.M. on November 7, 1967. The Complaint further alleges that one Charles Davis had driven a truck which had collided with a guard rail near said bridge and that said truck of Charles Davis was protruding into the right half of the traveled portion of the northwest bound lane of said highway and was in a stalled position. It is further alleged that the truck of said Charles Davis, at said time and place, did not have lights burning on it. Immediately thereafter one Harold Brewer was driving a pickup truck in a northwesterly direction near said point and passed the truck of Charles Davis previously referred to. Harold Brewer drove his pickup truck at the right of the traveled portion of said highway leaving his headlights and taillights lighted and returned to the truck of Charles Davis. Immediately thereafter one Donald Rich was operating a semi-truck tractor

near said point in a northwesterly direction and drove past both the vehicle of Charles Davis and Harold Brewer and thereafter parked said semi-tractor to the right of the traveled portion of said highway and returned to the immediate vicinity of the truck of Charles Davis. The semi-tractor truck was equipped with headlights and taillights and additional lamps including flashing amber lights to the rear which were operating when the semi-tractor truck was parked. At the time it was dark and snowing and the bridge in question was covered with ice, sleet and snow. At such time it is alleged that the decedent, Ellen L. Bowles, was driving a 1962 Corvair in a northwesterly direction over said highway and across said bridge and that her automobile skidded into the stalled truck operated by Charles Davis and that as a result of the collision between the 1962 Corvair of Ellen L. Bowles and the truck of Charles Davis the 1962 Corvair stopped on the traveled portion of said highway and extended across the right half of the northwest bound lane and into the south half for a distance of approximately four feet. Ellen L. Bowles immediately alighted from her automobile and walked across said highway. The Complaint further alleges that the Defendant-Appellee drove a 1967 Pontiac automobile in a northwesterly direction on said highway and across said bridge at a time when the decedent Ellen L. Bowles was near the left edge of the traveled portion of said highway, at which time the 1967 Pontiac automobile operated by the Appellee-Defendant struck the body of Ellen L. Bowles resulting in her immediate death. The specifications of negligence in the Complaint are contained in rhetorical paragraph 10 as follows:

"That said defendant, Hascal D. Miller, was guilty of one or more of the following specific acts of negligence, which was the *sole* proximate cause of the death of Ellen L. Bowles as hereinabove alleged.

(a) That said defendant, Hascal D. Miller, at said time and place, drove and operated his aforesaid automobile at a speed which was greater than was reasonable and

prudent under the conditions then and there existing, as hereinabove described, and having regard to the actual and potential hazards then and there existing and hereinabove described, towit: Sixty (60) miles per hour.

(b)   That said defendant, Hascal D. Miller, carelessly and negligently failed to drive his aforesaid automobile at an appropriately reduced speed when special hazards existed with respect to other traffic as hereinabove alleged.

(f)   That said defendant, Hascal D. Miller, carelessly and negligently failed to slow or stop his aforesaid automobile to avoid running into and against said Ellen L. Bowles when defendant saw, or in the exercise of ordinary care could have seen, said Ellen L. Bowles in time to have avoided running into and against her.

(d)   That said defendant carelessly and negligently failed to turn his car to the right or left in order to avoid running into and against said Ellen L. Bowles when said defendant, Hascal D. Miller, saw, or by the exercise of ordinary care could have seen, said Ellen L. Bowles in time to have avoided hitting her.

(e)   That said defendant, Hascal D. Miller, negligently and carelessly failed to keep a proper lookout for pedesterians and other automobiles on said road and especially this plaintiff when in the exercise of ordinary care said defendant, Hascal D. Miller, saw or could have seen the hazardous condition existing at said time and place as hereinabove described.

(f)   That said defendant, Hascal D. Miller, carelessly and negligently failed to see and observe that at said time and place the roadway ahead of him was blocked, when in the exercise of ordinary care said defendant, Hascal D. Miller, could have seen and observed said condition then and there existing as hereinabove described.

(g)   That said defendant, Hascal D. Miller, negligently and carelessly failed to heed the flashing blinker lights on the truck-tractor, as hereinabove described, when in the exercise of ordinary care such lights should have warned said defendant, Hascal D. Miller, of the condition existing on said highway at said time and place, as hereinabove alleged." (our emphasis)

The Appellant's summary of the evidence covers 77 pages of its brief. Since there is no specification in Appellant's Motion for New Trial that the decision is contrary to law,

we will not burden this opinion with a summary of it but will refer to items of evidence where appropriate in our consideration of the Appellant's 25 specifications of error.

Appellee's factual version of the collision covers one page of his brief as follows:

"This controversy arose as a result of the death of Ellen L. Bowles on Interstate Highway I-74 about five miles north of Shelbyville, Indiana. The accident occurred at about 6:30 A.M., November 7, 1968. It was dark at the time, and although the highway had not been slick or slippery as the defendant, Hascal D. Miller drove from his home in Shelbyville, toward his place of employment in Indianapolis, to his surprise he discovered that the highway on the bridge over Brandywine Creek was icy, and was somewhat slippery for about 300 feet north of the bridge. As the defendant, driving at 60 m.p.h. crossed the bridge, he suddenly saw in the highway before him two stalled vehicles with no lights burning. He maneuvered his car to the left for about 200 feet, passed the stalled vehicles without mishap, but then saw suddenly in front of him by about 15 to 30 feet, the plaintiff's decedent walking on the highway. She had been the driver of one of the stalled vehicles. The defendant was unable to avoid striking her, and she was killed instantly.

Ellen L. Bowles had preceded the defendant by about 20 seconds and had slid on the slippery highway into a van-type truck previously stopped at the right edge of the highway. In the course of her slide, she had put out a warning flare which had been placed south of the stopped van-type truck. After that collision, she got out of her automobile and was walking north on the highway when the defendant Miller came along."

The case was tried by jury resulting in a verdict for the Defendant-Appellee upon which judgment was entered. The Plaintiff-Appellant filed its Motion for a New Trial containing 25 specified errors at law, all of which are argued in its Brief. The trial court overruled the Motion for a New Trial and such ruling is the sole assignment of error here. Counsel for both parties have filed excellent briefs and made helpful and informative oral arguments in this case.

The first specification of error relates to a motion made

by the Appellant at the commencement of the trial and not in the presence of the jury to strike out the word "sole" from the second line of rhetorical paragraph 10 of its Complaint which has been emphasized by our italics.

In *Paxton* v. *Ferrell,* 144 Ind. App. 124, 244 N. E. 2d 439 (1969), we determined under a very similar procedural situation that the refusal by the trial court to permit the amendment of pleadings after trial commenced and before final judgment was not such an abuse of discretion to necessitate our reversal. It is a well established rule that the trial court may *use* its discretion in amending or refusing permission to amend pleadings during trial and before final judgment. Unless there is an *abuse* of this discretion and the complaining party has been harmed and his substantial rights taken from him, the trial court's action will not be disturbed. See also, *Oppenheimer et al.* v. *Craft,* 132 Ind. App. 452, 175 N. E. 2d 715 (1961).

In *General Outdoor Adv. Co.* v. *LaSalle Realty Corp.,* 141 Ind. App. 247, 218 N. E. 2d 141 (1966), Judge Hunter, speaking for this court, stated:

> "It is firmly established that a lower court can amend the pleadings before or during the trial regardless of the factor that a change in the cause of action might result. In Burr v. Mendenhall (1875), 49 Ind. 496, 498-499, our Supreme Court spoke of the 'irreconcilable' conflict in the decisions at the time as to whether a party could change his cause of action by an amendment of the pleadings after the issues were closed and during the trial. The court finally concluded:
>
> 'It will be observed, that the earlier and later decisions of this court, computing time with reference to the adoption of the code, accord with what was the manifest intention of the framers of the code, and that was to secure a speedy trial of causes upon their merits, disregarding all mere formal and technical objections. This intention is manifested in sections 97, 98, and 99 of the code, which prescribe what amendments may be made, and how a party may be relieved against a judgment taken against him by his mistake, inadvertance or excusable neglect.

The granting of leave to amend the pleadings after the issues are closed, and before the commencement of the trial, and on the trial, is very much within the sound legal discretion of the lower courts, and should only be granted in a proper case and upon good cause shown by affidavit, where the amendment makes a new issue or adds a new cause of action or ground of defense.'

See also Levy et al. v. Chittenden et al (1899), 120 Ind. 37, 22 N. E. 92. From these cases, it appears that the state of the law is that a party may amend his pleadings before or during the trial even though the cause of action is changed subject to the discretion of the court. However, there is no absolute limitation on the court's discretion in permitting amendments merely because the cause of action or theory of the complaint is changed. The decision to grant or deny an amendment is to be left entirely to the discretion of the lower court. *Barring a clear abuse of the lower court's exercise of such discretion, there will be no reversal on appeal for either a denial or granting of the requested amendment."* 141 Ind. App. at 252. (our emphasis)

See also, *Hill* v. *Jessup,* 139 Ind. App. 467, 220 N. E. 2d 662 (1966) ; *Sikich* v. *Springmann,* 221 Ind. 483, 48 N. E. 2d 808 (1943) ; *Needham* v. *Proffitt,* 220 Ind. 265, 41 N. E. 2d 606 (1942) ; and *Paulausky* v. *Polish Roman Catholic Union,* 219 Ind. 441, 39 N. E. 2d 440 (1942).

We must emphasize that the *exercise* of discretion is one thing and the *abuse* of discretion is quite another. It may be argued that the trial court should have exercised its discretion in this matter by granting the amendment. However, we cannot find that the trial court as a matter of law *abused* its discretion under our former system of Civil Procedure.

The Appellant complains of the trial court's refusal to give plaintiff's tendered instructions number 2 (as tendered), 6, 7 (as tendered), and 12. These instructions read as follows:

"Instruction No. 2. You are further instructed that there was in force a statute of the State of Indiana on the date of the accident herein, which provided as follows:

47-2004(a)   'No driver shall drive a vehicle on a highway at a speed greater than is reasonable and prudent

under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, or vehicle or other conveyance on or near, or entering the highway in compliance with legal requirements and with the duty of all persons to use due care.'

(d) 'The driver of every vehicle shall, consistent with the requirements in sub-section (a), drive at an appropriate reduced speed when . . . special hazards exist with respect to the pedestrian or other traffic by reason of weather or highway conditions.' "

(The trial court gave the above instruction. As indicated the Appellant contends an additional sentence should have been added.)

"Instruction No. 6. Where the acts of a person do nothing more than furnish a condition by which injury is made possible and that condition makes possible an injury by the subsequent independent act of a third person, the two are not concurrent, and the existence of the condition is not the proximate cause of the injury.

Therefore, you are instructed, that, if you find from a preponderance of the evidence that the decedent, Ellen J. Bowles, drove and operated an automobile at the place and time in question in this case, in such a manner as to collide with a certain GMC van truck and that as a result of such collision said GMC van truck and the automobile, driven and operated by said decedent, came to rest in the travelled portion of Interstate Highway 74 at said time and place, and if you further find that thereafter the defendant, Hascal D. Miller, approached said scene but that enough time had elapsed within which said defendant could have, in the exercise of ordinary care, avoided injury to plaintiff's decedent, then and in such event, you are instructed that the actions of plaintiff's decedent merely created a condition and if you further find that by the subsequent independent acts of Hascal D. Miller said decedent was killed, then you are instructed that the negligence, if any you find, of said decedent is not the proximate cause of said death and that under such circumstances said decedent would not be guilty of contributory negligence."

"Instruction No. 7

The defendant has the burden of proof on the issue of the decedent's contributory negligence, if any. Therefore, if under the evidence, you are unable to determine whether or not Mrs. Bowles was contributorily negligent, your finding on that issue should be in favor of the plaintiff."

(The trial court gave this instruction as set forth. As indicated, the Appellant tendered it with an additional sentence.)

It is the law of Indiana that unless it was the duty of the trial court to give the instruction precisely as requested there is no error in its refusal. *Carbon* v. *Johnson,* 141 Ind. App. 369, 228 N. E. 2d 52 (1967).

There is no reversible error in refusing to give instructions as to elements not within the issues even though they state a proposition of law correctly. *Coleman* v. *Chapman,* 139 Ind. App. 385, 220 N. E. 2d 285 (1966).

With reference to plaintiff's tendered instruction number 2 the Appellant contends that the court should have added to it the following sentence:

"If you find from a preponderance of the evidence herein that the defendant, Hascal D. Miller, violated the statute on the occasion in question and that the violation was without excuse or justification and that the violation of said statute was the sole proximate cause of the accident and death to plaintiff's decedent, then you are instructed that such conduct would constitute negligence on the part of the defendant and entitle the plaintiff to recover."

In effect the Appellant is arguing that it was reversible error for the trial judge to omit the "kicker" from this instruction. The Instruction number 2 was given without the kicker and as such it is a straightforward instruction on the statute and the omission of the kicker is not reversible error. The court did give three instructions pertaining to statutes of the State of Indiana in addition to Plaintiff's instruction number 2. It gave Plaintiff's instruction number 3, which states:

"You are further instructed that there was in force a statute of the state of Indiana on the date of the accident herein, which provided as follows:

"Every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon a roadway and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway."

and also gave Defendant's instruction number 10, which sets forth Section 47-2019 (a) of Burns' Indiana Statutes Annotated, and Defendant's instruction number 9, which states:

"Violation of a statute in the State of Indiana is prima facie evidence of negligence and places upon the violator the burden of showing a justifiable excuse for such a violation. If he shows by a preponderance of the evidence that he had a justifiable excuse for such violation, he is not negligent on the account of the statutory violation."

The trial court also gave Plaintiff's instruction number 1, which states:

"You are instructed that the driver of a motor vehicle on a public highway is under a duty to maintain a reasonable lookout for other persons legally proceeding on or across said highway, and to maintain reasonable control over his vehicle so as to avoid colliding with persons legally on such highway, as alleged in the complaint.

The failure of a person to use due care in maintaining a reasonable lookout for others upon said highway, or the failure to use due care in the control of one's motor vehicle, or the failure to stop the same, turn to the left or right, or slow the vehicle in order to avoid striking another, constitutes negligence, if, under similar circumstances a reasonably prudent person would have stopped said vehicle, turned it to the left or right or slowed the same in order to avoid striking another."

The elements which the Appellant wanted to include in Plaintiff's instruction number 2 were given in other instructions, namely, Plaintiff's instruction number 1, Plaintiff's instruction number 3, and Defendant's instruction number 9.

It is also apparent that the trial court omitted the suggested sentence from Plaintiff's instruction number 2 to eliminate its mandatory character. Our Supreme Court has said that although mandatory instructions are not necessarily bad we look with disfavor upon their use because of the risk involved in making a statement of the evidentiary facts under which the law would mandate a certain result. *White* v. *Evansville American Legion Home Association*, 247 Ind. 69, 210 N. E. 2d 845 (1965) and *Perry* v. *Goss*, 253 Ind. 603, 255 N. E. 2d 923 (1970). In excluding the suggested sentence from Plaintiff's instruction number 2, the trial court was responding to this admonition.

The Plaintiff's tendered instruction number 6 pertains to the issue of proximate cause and on this issue the court gave the Plaintiff's instruction number 11, which states:

> "The term 'proximate cause' has been used from time to time in these instructions; and it is, therefore, important for you to know what that term means. Proximate cause is a cause which is direct, significant and substantial and describes the relationship between two events or conditions. On the other hand, an act or condition is not a proximate cause as to those matters with which its relationship is remote, indirect, insignificant or non-substantial."

Also, on the issue of proximate cause the court gave Defendant's instruction number 8, which states:

> "The causal connection between the negligence of Ellen L. Bowles and her death is not broken by an intervening independent act where that act should have been reasonably foreseen and expected under the circumstances. Negligence which produces a condition is regarded as continuous in its operation and as the proximate cause of injury and death, if the second intervening act could be reasonably anticipated."

In *New York Central Railroad Company* v. *Cavinder*, 141 Ind. App. 42, 211 N. E. 2d 502 (1965), we find a most comprehensive and accurate statement of the law of proximate cause.

In view of the rule cited from *Carbon* v. *Johnson, supra,* and in *New York Central Railroad Company* v. *Cavinder, supra,* and in view of the contents of Plaintiff's instruction number 11 and Defendant's instruction number 8, set out in full, *supra,* there is no reversible error in the refusal of the trial court to give the Plaintiff's tendered instruction number 6.

The Appellant contends that the court erred in refusing to give Plaintiff's instruction number 7 with the following sentence added:

> "In considering whether or not she acted with reasonable care under the circumstances, you are entitled to take into consideration the accident in which she had suffered some injury or shock in the accident, her ability to reason clearly, and all the other evidence which you may find relevant or material as to whether or not she was acting with due care at the time when she was struck by the defendant's vehicle."

Plaintiff's instruction number 7 was a correct statement of the law as given and there was no reversible error in the omission of the suggested sentence from it. Likewise, the elements in the suggested addition to Plaintiff's instruction number 7 are adequately covered in other instructions.

The Plaintiff's tendered instruction number 12 relates to the doctrine of last clear chance. Recently in *Davis* v. *Brown,* 146 Ind. App. 465, 256 N. E. 2d 585 (1970), (no rehearing requested), this court was confronted with a very similar situation. Judge Pfaff, speaking for this court, stated:

> "Our most recent statement and application of the doctrine of 'last clear chance' is found in the case of National City Lines, Inc. v. Hurst (1969), 145 Ind. App. 278, [18 Ind. Dec. 420], 250 N. E. 2d 507 (Transfer denied). In reviewing prior applications of the doctrine, Judge Hoffman noted that '[t]he limits of the doctrine are narrow, and this is as it should be.' In further emphasizing the prescribed limits of the doctrine, the Court quoted from Indianapolis Traction, etc. Co. v. Croly (1913), 54 Ind. App. 566, 587, 96 N. E. 973, 981 (Transfer denied), as follows:

' . . . their chances are equal; but the motorman (defendant) actually possesses the knowledge of the danger and appreciates the necessity of taking steps to avoid ■ the injury, while the person injured has no actual knowledge of his danger, and does not appreciate the necessity of taking steps to avoid it.'

The present application of the doctrine, as prescribed by National City Lines, Inc. v. Hurst, supra, is limited in scope to those situations evidencing the following state of facts as set forth at [page 424 of 18 Ind. Dec.] page 510 of 250 N. E. 2d:

'1) The defendant had actual knowledge of the plaintiff;

2) The defendant knew of the plaintiff's perilous position;

3) The defendant had physical control over the instrumentality and had the last opportunity through the exercise of reasonable care to avoid the injury; and

4) The plaintiff was oblivious to his own danger, notwithstanding his own contributory negligence. See: Lewis v. Mackley, 122 Ind. App. 247, 99 N. E. 2d 442 (1952) (Transfer denied) ; Lee v. Dickerson, 131 Ind. App. 422, 171 N. E. 2d 698 (1961) ; Stallings v. Dick, supra; Ewing v. Biddle, 141 Ind. App. 25 [8 Ind. Dec. 405], 216 N. E. 2d 863 (1966).'

The issue in the instant case is, therefore: Is the evidence sufficient to support an instruction on the doctrine of 'last clear chance?' Before an instruction can properly be tendered the record must contain evidence which supports each of the four elements of the doctrine.

The appellant testified that she 'did not realize' that her vehicle and the appellee's vehicle were going to strike each other 'until the time of impact.' Also, appellant stated that the appellee's vehicle was proceeding slowly through the bridge, and that her vehicle (appellant's) was stopped far enough from the bridge to permit the appellee's vehicle to pass.

The appellee testified that as she approached the one-lane bridge from the west she saw appellant's vehicle and estimated that her (appellee's) vehicle would reach the bridge first. Appellee stated that as she crossed the bridge the appellant's car slowed and pulled to the right at the east end of the bridge Appellee stated that she was concerned about hitting the bridge railing, and upon exiting

the bridge she struck a glancing blow against the appellant's vehicle.

This evidence does not support an instruction on the doctrine of last clear chance and the trial judge was correct in refusing to submit such an instruction

In the case before us the record fails to establish that appellee knew of appellant's perilous position. This determination is not to be based upon an individual's statement of actual knowledge of another's perilous position; rather, because of the simple availability of a denial of actual knowledge of the peril, the record must contain evidence justifying the subjective imputation of actual knowledge to the alleged tort feasor. National City Lines, Inc. v. Hurst, supra. Application of the doctrine of last clear chance contemplates a known peril which can be avoided by due care, not a peril which might have been known by the exercise of due care. Heldt v. Thompson (1927), 86 Ind. App. 270, 157 N. E. 60. Having discovered a plaintiff's peril, the doctrine imposes liability when a defendant negligently fails to avoid that peril. We cannot say, as a matter of law, that the appellant in the instant case, Maycel Davis, in stopping her vehicle on one side of a one-lane bridge, created a known peril which the appellee was legally obligated to avoid, notwithstanding any contributory negligence on the part of the appellant.

As aforesaid, the doctrine is one of limited application. The instant case is one of determining liability as between the negligence of both parties and is not representative of those cases in which the doctrine of last clear chance is to be invoked."

Based on the foregoing authorities, we cannot say, as a matter of law, that it was reversible error to refuse to give Plaintiff's tendered instruction number 12.

The Appellant contends that the trial court erred in the giving over objection of court's instruction number 1, court's instruction number 2, Defendant's tendered instruction number 1, Defendant's tendered instruction number 2, Defendant's tendered instruction number 3, Defendant's tendered instruction number 5, Defendant's tendered instruction number 7, Defendant's tendered instruction number 8, Defendant's

tendered instruction number 9, and Defendant's tendered instruction number 10.

Preliminary to a consideration of the Appellant's asserted errors with reference to instructions given, the statement of Judge Arterburn in *Hendrix* v. *Harbelis,* 248 Ind. 619, 624, 230 N. E. 2d 315 (1967), helps put the whole instruction process in prospective:

> "Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an overemphasis placed upon the wording and refined meaning of instructions which far exceed their actual effect upon the jury. When an instruction has to be read and reread by a legally trained mind to catch a slight variation or error in its meaning, it is difficult to believe that a jury of laymen could have been misled. Words are mere signs or symbols of meaning and thought, which are never exact. We strive with inexact tools to work out refinements and precise lines in statements of thoughts and ideas, but are never able to reach exact perfection. In the writing of instructions, we are eternally confronted with attempts and failures at exactitude, and we must keep this human frailty in mind when we examine the language of instructions. Noel v. State (1966), 247 Ind. 426, 215 N. E. 2d 539, at p. 542; White v. Evansville American Legion Home Ass'n (1965), 247 Ind. 69, 210 N. E. 2d 845; Woods v. State (1957), 236 Ind. 423, 140 N. E. 2d 752."

More recently in *Perry* v. *Goss,* 253 Ind. 603, 255 N. E. 2d 923 (1970), the above statement was reaffirmed.

The court's instruction number 1 is as follows:

> "At this time it is the duty of the Court to instruct you concerning the issues of the trial, the burden of proof, the credibility of witnesses, and the manner of weighing evidence.
>
> This was a complaint filed by the Administrator of the estate of one Ellen L. Bowles, deceased, against Hascal D. Miller, arising out of an incident that occurred on November 7, 1967, on Interstate Highway 74 in Shelby County, Indiana, near a bridge across Brandywine Creek early in the morning at approximately 6:20 A.M.

Plaintiff alleges that there was an accident involving several cars and trucks at said bridge which was covered with ice and that it was dark and snowing at the time. Plaintiff alleges that the decedent, Mrs. Bowles' car was involved in the accident and that she alighted therefrom and started to walk across the road and that shortly thereafter, the defendant came along in his automobile and struck her, causing injuries which resulted in immediate death and that defendant was guilty of acts of negligence which was the sole proximate cause of her death. The pertinent part of the complaint reads as follows: (H.I.)

To this complaint the defendant filed an Answer which amounts to a general denial under which defendant has interposed the defense that the decedent, Mrs. Bowles, was guilty of negligence which was a proximate contribution to her injuries and death.

The issue thus presented is whose negligence caused the accident as between the decedent, Mrs. Bowles and Hascal D. Miller. Plaintiff claims that the sole proximate cause of the injuries and death of Mrs. Bowles was the negligence of the defendant, Miller. Defendant Miller claims he was not negligent and even if he was guilty of negligence, that the deceased, Mrs. Bowles, was also guilty of negligence which proximately contributed to her own injuries and death. Under the law, contributory negligence by the plaintiff is the defense to a charge of negligence on the part of the defendant.

The Court will instruct you later on in full on the question of negligence and contributory negligence. Thus the issue to be decided in this case by this jury at this time will be the question of negligence. You will have to decide whether the defendant was negligent, and if so, if his negligence was the sole proximate cause of the injuries and death of Mrs. Bowles.

Further, you will have to decide if Mrs. Bowles was negligent in this accident and whether her negligence contributed as a proximate cause to her injuries and death. All these facts you must decide by a fair preponderance of all the evidence and under the instructions given by the Court as to the law. In brief, the only questions you will decide are: One, was the defendant, Miller, guilty of any act of negligence as charged; and, Second, was the deceased, Mrs. Bowles, guilty of contributory negligence, or was she free from such contributory negligence."

The Appellant's objection to this instruction is as follows:

"(1)  The last sentence of the first paragraph on page 2 of said instruction 'Under the Indiana law, contributory negligence by the plaintiff is a defense to a charge of negligence on the part of the defendant.' is an incorrect statement, because it is only that contributory negligence which is a proximate cause of the death complained of that is a defense; and the omission of this element in a case in which proximate cause is hotly contested is prejudicial; and further, it eliminates the possibility which should be considered by the jury that evidence shows a last clear chance situation in which contributory negligence is not a defense.

(2)  The instruction is also erroneous in that it instructs the jury that they must determine whether the negligence of the defendant was the 'sole' proximate cause of the death of Mrs. Bowles. This error appears in the last sentence of the second paragraph of the instruction. This is erroneous because it excludes from the consideration of the jury the possibility that other concurring causes were present which would not keep the defendant from being liable. In other words, if the condition of the weather or ice on the highway, or negligence of Mr. Davis concurred with the negligence of the defendant, the defendant would still be liable even though these other causes were concurrent causes. Under the facts of the case, this could be misleading."

In this regard it should be emphasized that the court gave other instructions on the subject of contributory negligence and proximate cause, namely, the court's final instruction number 2, which states:

"Contributory negligence is the failure of a plaintiff to use reasonable care to avoid injury to herself which failure is a proximate cause of the injuries for which she seeks to recover."

Plaintiff's instruction number 7 reads:

"The defendant has the burden of proof on the issue of the decedent's contributory negligence, if any. Therefore, if under the evidence, you are unable to determine whether or not Mrs. Bowles was contributorily negligent,

your finding on that issue should be in favor of the plaintiff."

Plaintiff's instruction number 9 reads:

"Contributory negligence of the decedent, if any, is not a defense unless it was a proximate cause of the accident in question."

The trial court also gave Plaintiff's Instruction number 1, which states:

"You are instructed that the driver of a motor vehicle on a public highway is under a duty to maintain a reasonable lookout for other persons legally proceeding on or across said highway, and to maintain reasonable control over his vehicle so as to avoid colliding with persons legally on such highway, as alleged in the complaint.

The failure of a person to use due care in maintaining a reasonable lookout for others upon said highway, or the failure to use due care in the control of one's motor vehicle, or the failure to stop the same, turn to the left or right, or slow the vehicle in order to avoid striking another, constitutes negligence, if, under similar circumstances, a reasonably prudent person would have stopped said vehicle, turned it to the left or right, or slowed the same in order to avoid striking another."

It also gave Plaintiff's Instruction number 4, which states:

"The driver of an automobile upon a public highway is required to see what he could have seen if he had exercised due care under the circumstances, and he is not excused for the failure to discover danger and avoid the same, if, by the use of ordinary care, he could have discovered and avoided it.

Therefore, if you find from a greater weight of the evidence, that the defendant, herein, Hascal D. Miller, could have, by the use of ordinary care, seen plaintiff's decedent prior to the collision, in time to have operated his automobile differently or stopped or slowed the same, and if you further find from a greater weight of the evidence, that by the use of ordinary care, the defendant could have avoided the collision with plaintiff's decedent, then you are instructed that such failure to exercise reasonable or or-

dinary care on the part of the defendant constitutes negligence."

And also, Plaintiff's instruction number 5, which stated:

"You are further instructed that if you find that the plaintiff's decedent, Ellen L. Bowles, as she walked from Interstate Highway #74, was confronted with a sudden emergency, not of her own making, and if you further find that she was without sufficient time to determine with reasonable certainty the best course to pursue, then the plaintiff's decedent is not held with the same degree of judgment that would be required of her if she had had time for deliberation."

See also Plaintiff's instruction number 10, which stated:

"you are instructed that negligence and contributory negligence can be proved by circumstantial evidence."

When considered in the light of the other instructions, the giving of court's preliminary instruction number 1 is not reversible error. See *Finster* v. *Wray,* 131 Ind. App. 303, 164 N. E. 2d 660 (1960).

The Appellant contends error in the giving of court's preliminary instruction number 2, which reads as follows:

"Under the issues thus formed, the burden is upon the plaintiff to prove the material allegations of his complaint by a fair preponderance of the evidence before he can recover.

Under the issues thus formed, the burden is upon the defendant to prove any affirmative defense by a fair preponderance of the evidence before he can prevail upon that theory.

By the burden of proof is meant that considering all the evidence given in the cause, that evidence tending to establish a given fact outweighs the evidence to the contrary. 'By preponderance' is not necessarily the greater number of witnesses testifying to any one fact, but the evidence applying to that particular fact which is greater in weight and credibility.

If, after considering all the evidence in the cause, you should find that the evidence on any given question is

evenly balanced, you should find on that question against the plaintiff, for in such case, there would be no preponderance in favor of such proposition."

To which the Appellant objected as follows:

"The plaintiff objects to the Court's Preliminary Instruction No. 2 for the reason that it states in the final paragraph thereof: 'If after considering all the evidence in the cause, you should find that the evidence on any given question is evenly balanced, you should find on that question against the plaintiff . . .' This is an erroneous statement of law because the defendant has the burden of proof on the issue of contributory negligence. This error is not cured by the fact that the correct statement of law appears later in the instruction. It is well established law that there is error in giving inconsistent instructions. (See *Wenning* v. *Teeple*, 144 Ind. 189; *Fowler* v. *Wallace*, 131 Ind. 347; and *Harper* v. *James*, 246 Ind. 131.

'The instruction is not saved by any reference to affirmative defenses because the jury was never told what is an affirmative defense."

In *Perry* v. *Goss*, 253 Ind. 603, 255 N. E. 2d 923 (1970), Judge Arterburn, speaking for our Supreme Court, stated:

"The appellant-plaintiff objected to this instruction for the reason first, that it is mandatory in nature and omits essential elements therein, to wit: it fails to define contributory negligence because the word proximate is omitted therefrom. A mandatory instruction is one in which there is an attempt to set out certain facts upon which the jury is directed to reach a certain result. Although mandatory instructions are not necessarily bad, we look with disfavor upon their use because of the risk involved in making a statement of the evidentiary facts under which the law would mandate a certain result. White v. Evansville American Legion Home Association (1965), 247 Ind. 69, 210 N. E. 2d 845. Instructions which are mandatory in character, which attempt to set up a factual situation directing the jury to a certain result, are to be distinguished from instructions which merely state propositions of law without incorporating a factual situation, as for example telling the jury that if contributory negligence exists the plaintiff is not entitled to recover. In the latter case the court is merely stating propositions of law not based upon a de-

tailed factual situation. In order to properly instruct a jury it is necessary that the court state general propositions of law and their application to the case."

Even under pre-*Perry* v. *Goss* standards preliminary instruction number 2 is not mandatory. See *Davison* v. *Williams*, 251 Ind. 448, 242 N. E. 2d 101 (1968).

Except as to mandatory instructions, ambiguity, inaccuracy, or incompleteness of one instruction may be cured by another instruction which is not inconsistent with the other. A party cannot complain of a non-mandatory instruction given by the court, which although incomplete, is a correct statement of the law so far as it goes where such party did not tender a more full instruction on the subject. 2 Wiltrout, Indiana Practice, § 1400. The trial court committed no reversible error in giving preliminary instruction number 2.

The Appellant objected to the giving of Defendant's tendered instruction number 1, which reads as follows:

"A traveler upon a highway regularly used by the public has a right to assume that the way is reasonably safe for ordinary travel. A traveler must use his faculties in an ordinary manner to discover dangers. He is not required to anticipate extraordinary hazards, nor to constantly expect and search unusual dangers. Day or night, a traveler on the highway is charged with the duty of exercising ordinary care to observe dangers and obstructions, and is only chargeable with notice of obstructions that a person of ordinary prudence would be reasonably expected to observe."

The Appellee contends that this instruction is an accurate statement of law as it is from *Opple* v. *Ray*, 208 Ind. 450, 195 N. E. 2d 81 (1935). In *Opple* v. *Ray* our Supreme Court stated:

"This is the measure of care required of the driver of a motor vehicle upon the highway. One who travels the public highway in the daylight is not charged with the duty of seeing every dangerous obstruction, and stopping

before coming in contact with it, upon penalty of being chargeable with contributory negligence. A traveler upon a highway regularly used by the public has a right to assume that the way is reasonably safe for ordinary travel. City of Indianapolis v. Gaston (1877), 58 Ind. 224; Town of Elkhart v. Ritter (1879), 66 Ind. 136; Noblesville, etc., Co. v. Loehr (1890), 124 Ind. 79, 24 N. E. 579.

A traveler must use his faculties in an ordinary manner to discover dangers. He is not required to anticipate extraordinary hazards, nor to constantly expect and search for unusual dangers. Day or night, a traveler on the highway is charged with the duty of exercising ordinary care to observe dangers and obstructions that persons of ordinary prudence would be reasonably expected to observe."

There was no reversible error in giving Defendant's tendered instruction number 1.

The Appellant objects to the giving of Defendant's tendered instruction number 2, which reads as follows:

"You are instructed that there was in full force and effect a statute in the State of Indiana on November 7, 1967, which reads in part as follows:

*Burns Sec. 47-2004. Speed Regulations.* (c) Prima Facie speed limits. Where no special hazard exists, the following speeds be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:

(3)    * * * Provided, that on Interstate defense network of dual highway a speed of seventy (70) miles per hour shall be lawful.'

At the time and place of this accident, the applicable speed limit was seventy miles per hour."

Since this was simply an instruction pertaining to a relevant statute as to the speed limit at the time and place of the accident there is no reversible error in giving the same, especially in view of the contents of other instructions such as Defendant's tendered instruction number 9 set forth above which pertains to the violation of statutes, and also Plaintiff's tendered instruction number 2 which was given and which states:

"You are further instructed that there was in force a statute of the State of Indiana on the date of the accident herein, which provided as follows:

47-2004 (a)    "No driver shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.   In every event speed shall be so restricted as may be necessary to avoid colliding with any person, or vehicle or other conveyance on or near, or entering the highway in compliance with legal requirements and with the duty of all persons to use due care."

(d)    "The driver of every vehicle shall, consistent with the requirements in sub-section (a), drive at an appropriate reduced speed when . . . special hazards exist with respect to pedestrian or other traffic by reason of weather or highway conditions."

The Appellant next contends error in the giving, over objection, of the Defendant's tendered instruction number 3, which states:

"Contributory negligence on the part of Ellen L. Bowles is a defense in this cause of action and is defined as carelessness or negligence on the part of Ellen L. Bowles which proximately causes or contributes to the accident and her subsequent death; in other words, if a person who is killed in the course of an accident does or omits to do some act which a reasonably careful and prudent person would have done or omitted to do under the circumstances of the particular case and that act or omission proximately causes or contributes to her injury and death, the person is guilty of contributory negligence, and recovery of damages for her death cannot be made."

The Appellee cites and relies on *Huey v. Milligan,* 242 Ind. 93, 175 N. E. 2d 698 (1961), and such reliance is well-founded. In *Holtam* v. *Sachs,* 136 Ind. App. 231, 240, 193 N. E. 2d 370-375 (1963), this court stated:

"In each of said instructions the jury were told that 'they may find for the plaintiff' under the facts set forth therein. These are neither mandatory, as a matter of law, nor prejudicial, as a matter of law and fact.   The failure to include all the essential elements of proximate cause and contribu-

tory negligence in any one instruction not mandatory in character, is not error."

There is no reversible error in the giving of this instruction.

Appellant next contends error in the giving over objection of Defendant's instruction number 5, which reads as follows:

"The law does not presume that the defendant was negligent as charged in Plaintiff's complaint, and mere proof that the decedent died of injuries received in an automobile accident is not of itself alone sufficient to establish liability on the part of the defendant. In order to recover against the defendant in this action, the plaintiff must go further and prove by a fair preponderance of all the evidence that the defendant was negligent as charged in the complaint and that such alleged negligence proximately caused the death of plaintiff's decedent; provided, further, that the plaintiff's decedent was free from any negligence contributing to the accident and her death."

The Plaintiff-Appellant objected to that part of Defendant's instruction number 5 which told the jury that they had to "prove by a fair preponderance of all the evidence that the defendant was negligent as charged in the complaint." The Appellant relies on the well established rule that it is not necessary for a plaintiff to prove each and every charge of negligence but must prove only one of the specified acts of negligence. See *Burks* v. *Walters,* 127 Ind. App. 358, 141 N. E. 2d 872 (1957).

In the court's instruction number 1 the jury was instructed that the only questions for their decision "was the Defendant Miller guilty of *any act* of negligence as charged" as well as the issue of contributory negligence. There was no reversible error in giving Defendant's tendered instruction number 5.

The Appellant further claims error in the giving over objection of Defendant's tendered instruction number 7, which reads as follows:

"The defendant was only required to use such reasonable precaution to prevent an accident and consequent injury as would have been adopted by ordinarily prudent persons

under the circumstances as they appeared immediately before the accident. The question for you to determine from the evidence is not whether the accident to the plaintiff's decedent might have been avoided, if the defendant had anticipated its occurrence, but whether taking all the circumstances as they existed just before or at the time of the accident, the defendant was negligent in failing to anticipate and guard against the said accident."

This is a correct statement of law as defined in *Gamble* v. *Lewis*, 227 Ind. 455, 85 N. E. 2d 629 (1949). As a correct statement of law it is not reversible error.

The Appellant contends error in the giving over objection of Defendant's tendered instruction number 8, which is set out above.

Recently Chief Judge Hastings, writing for the United States Court of Appeals for the 7th Circuit, in *Zahora* v. *Harnischfeger Corp.*, 404 F. 2d 172, 177 (7th Cir. 1968), stated:

"The law of Indiana on proximate cause is clear; the causal connection between a defendant's negligence and the plaintiff's injury is not broken by intervening independent forces where those forces should have been reasonably forseen and expected under the circumstances. New York Central Railroad Company v. Cavinder, 141 Ind. App. 42, 211 N. E. 2d 502 (1965). '. . . negligence which produces a condition is regarded as continuous in its operation and as the proximate cause of the injury, if the second (intervening) negligent act could be reasonably anticipated.' 21 I.L.E., Negligence, § 67, p. 334."

The above is a correct statement of the Indiana law, Defendant's instruction number 8 is consistent therewith.

The court gave, over Appellant's objection, Defendant's tendered instruction number 9, which states:

"Violation of a statute in the State of Indiana is prima facie evidence of negligence and places upon the violator the burden of showing a justifiable excuse for such a violation. If he shows by a preponderance of the evidence that he had a justifiable excuse for such violation, he is not negligent on the account of the statutory violation."

The Appellant argues that this violates Burns' Indiana Statutes Annotated, § 2-1025, in regard to the Defendant's burden of proving contributory negligence.

In *Hendrix* v. *Harbelis*, 248 Ind. 619, 623, 230 N. E. 2d 315 (1967), Judge Arterburn, speaking for our Supreme Court stated:

> "Generally, where one has violated the provisions of a statute in the operation of an automobile on a highway, he is *prima facie* guilty of negligence, unless the evidence discloses that it was impossible to comply to the statute or non-compliance to it was excusable because of circumstances resulting from events beyond his control. After a party establishes a *prima facie* case, the burden is then upon the defendant to come forward with any evidence which he might have to prove that compliance was impossible or excusable."

Defendant's tendered instruction number 9 is an accurate statement of the law as defined in the *Hendrix* case.

The trial court gave over objection defendant's tendered instruction number 10, which stated:

> "On November 7, 1967, there was in full force and effect a statute in the State of Indiana which reads in part as follows:
>
> '49-2019a. Driving on Divided or Limited Access Highways . . . * * *
>
> 'Restrictions on use of limited access roadway. The State Highway Department may by resolution or order entered in its minutes, and local authorities may by ordinance, with respect to any limited access roadway under their respective jurisdiction, prohibit the use of any such roadway by pedestrians, bicycles or other non-motorized traffic or by any person operating a motor-driven cycle. The State Highway Department or the local authority adopting any such prohibiting regulations shall erect and maintain official signs on the limited access roadway on which such regulations are applicable and when so erected, no person shall disobey the restrictions stated on such signs."

There was evidence that a sign was erected at the entrance to I-74 at Shelbyville prohibiting pedestrian traffic on the Interstate Highway. That sign represented a part of the circumstances that vehicles are operated on an interstate highway. This instruction is relevant. This instruction does not say anything with reference to Ellen L. Bowles' right to get out of her automobile as the Appellant suggests it does. There was no error in giving this instruction.

The Appellant attacks the form of verdict which was submitted to the jury. However, the Appellant failed to tender for giving any verdict forms and has waived any errors in this regard. *Christian* v. *Gates Rubber Co. Sales Division*, 145 Ind. App. 229, 250 N. E. 2d 486 (1969).

The Plaintiff-Appellant tendered Instructions Numbered 2A and 3A, which read:

"Instruction No. 2A

You are further instructed that it is the law of this state that no person shall drive or operate a motor vehicle upon a public highway in this state at a speed greater than is reasonable or prudent, having regard to the condition of the weather and the use of the highway or so as to endanger the life or limb or injure the property of other persons. If you find from a preponderance of the evidence in this case that at the time of the collision as alleged in plaintiff's complaint, said defendant, Hascal D. Miller, was operating his automobile in violation of said law, and if you further find that the unlawful operation by said defendant of said automobile was the proximate cause of the death of plaintiff's decedent as alleged in plaintiff's complaint and that decedent herself was not contributorily negligent, then, I instruct you that under the law, such conduct on the part of the defendant is considered to be negligence."

"Instruction No. 3A

You are instructed that there was in force a statute of the State of Indiana on November 7, 1967, which provided in effect that every driver of a vehicle should exercise due

care to avoid colliding with any pedestrian upon a roadway and should give warning by sounding the horn when necessary, and should exercise proper precaution upon observing any child or confused person or incapacitated person upon such highway.

If you find from a preponderance of the evidence herein that Ellen L. Bowles, immediately prior to her death was walking upon or along Interstate Highway I-74 and was at that time confused or incapacitated and if you further find from a preponderance of the evidence that Hascal D. Miller approached Ellen L. Bowles and saw or could have seen that she, at that time was confused or incapacitated, then and in such event it became the duty of said Hascal D. Miller to use proper precaution as would an ordinary prudent man to avoid colliding with said Ellen L. Bowles."

The Plaintiff-Appellant withdrew both 2A and 3A. In reading the instructions at the close of the trial, the trial judge mistakenly read 2A and 3A to the jury. At that time counsel for Appellee moved to withdraw the submission which the trial court overruled. At a later time during its deliberations the jury requested that they be reinstructed. The trial judge reinstructed the jury, deleting both 2A and 3A. At the time of reinstruction the Plaintiff-Appellant moved for the withdrawal of the case because of the inconsistency in the court's instruction, which the trial court overruled. The trial court's action in this regard is far from a model of good trial practice and such is to be avoided. Under Burns' Indiana Statutes Annotated § 2-2018, the trial court has discretion in regard to the withdrawal of a case from the jury and there is no showing that it was abused here.

The Appellant objects to certain evidence elicited from a Mr. Tingle, an investigating police officer on cross-examination. The following questions, objections and answers must be considered:

"Q. Officer, in the course of your conversation with the defendant, Mr. Miller, did he ask you whether or not there was anything else he could have done in an effort to avoid this collision?

A. Yes, he did.

Q. What did you tell him?

    Mr. Lawton: We object to the question on the grounds that it is immaterial. It invades the province of the Jury. It is inadmissible. The admission of the defendant or statements of other people are not material.

Mr. Warren Brown: And for the further reason, it is hearsay.

The Court: The objection is overruled. He may testify.

A. Will you repeat your question?

Q. When he asked you whether there anything he could have done to avoid the accident, what did you tell him?

    Mr. Lawton: I would like to make the objection more precise—Plaintiff objects to this question because it calls for the invasion of the province of the jury, and it is not a proper question. It is not admissible because it is not an admission of the parties hereto and does not come within the exceptions under the hearsay rule.

The Court: The Court has already ruled. He may answer.

Q. Officer, in the course of your conversation with the defendant, Mr. Miller, did he ask you whether or not there was anything else he could have done in an effort to avoid this collision?

A. Yes, he did.

Q. What did you tell him?

After the plaintiff made its objections, the officer answered:

A. I told Mr. Miller that I thought the accident was unavoidable and that he did everything he could do."

The only case cited by Plaintiff-Appellant is *McCraney* v. *Kuechenberg*, 144 Ind. App. 629, 248 N. E. 2d 171 (1969), which relates to opinion evidence of a police officer. However, the issue under this specification is the proper scope of cross-examination of the police officer.

The plaintiff had called Mr. Tingle as its witness and asked him for the conversation that he had with Mr. Miller in the following words:

"Q. After the interview with Mr. Richardson, what did you then do, sir?

A. I believe then I talked with Mr. Miller.

Q. Is that the defendant Hascal Miller?

A. Yes, sir."

Q. Would you relate to the members of the jury your conversation with Mr. Miller on this occasion."

The Plaintiff-Appellant opened the door by asking about conversations. Where part of a conversation is put in evidence, the adverse party is entitled to prove the remainder of ■ it. *Lyon* v. *Aetna Life Ins. Co.*, 112 Ind. App. 573, 44 N. E. 2d 186 (1942) ; *Carey* v. *City of Richmond*, 92 Ind. 259 (1883) ; *American Steel Foundries* v. *Sech*, 69 Ind. App. 538, 122 N. E. 347 (1919) and *Featherstone Machine Co.* v. *Criswell*, 36 Ind. App. 681, 75 N. E. 30 (1905).

Appellant contends the trial court erred in refusing to permit the witness Loren Ayres to answer questions concerning his opinion as to (1) the maximum stopping distance of vehicles under the existing conditions of the accident; (2) the scientific method for determining speed of a vehicle; (3) the formula for determining the speed of a vehicle; (4) the minimum speed that defendant's vehicle could have been traveling at the time of its impact with plaintiff's decedent; (5) the stopping distance of defendant's vehicle; and (6) the method for computing the minimum speed of defendant's vehicle at the time of impact.

Before the above questions were asked of the witness, Mr. Ayres, it was first brought out that he had attended Indiana University and Northwestern University, receiving both an A. B. and a Masters' Degree; that his major was Public Administration and Traffic Safety and that he had attended Northwestern University under an ASFA Fellowship to the Northwestern Traffic Safety Institute; that he had been a member of the Indiana State Police from 1935 to 1949 and taught as a member of the faculty of Indiana University from 1949 to 1957 in the Department of Police Administration; that he had also been a member of the Purdue Institute of

Public Safety teaching Traffic Safety, Industrial Security and Fleet Safety; that in addition, the witness had been a professional consultant on accident reconstruction and had published professionally 30 to 35 articles on the subject of accident reconstruction; that during his career he had conducted in excess of 650 tests on different types of pavement under different conditions to determine stopping distances of automobiles.

Prior to his examination before the jury in this case, he had visited the scene of the accident and had inspected the same.

At this point, the witness was asked to assume the facts which were in evidence, as then existed, immediately prior to the accident, and on the basis of those assumptions, he was asked his opinion concerning the maximum distance that would have been required to stop the defendant's vehicle under the existing conditions had the defendant applied his brakes at the point which the defendant himself stated that he did and utilized them to the best efficiency under the conditions. The defendant objected to the introduction of such evidence citing the case of *Pickett* v. *Kolb,* and urged that the question called for an answer which was completely within the province of the jury. This objection was sustained by the court and plaintiff's offer to prove was made, which showed that at 60 m.p.h. and under the conditions described and with the vehicles desribed, the defendant's vehicle should stop in a distance of 184 feet as a maximum, which would have avoided collision with plaintiff's decedent.

Thereafter, the witness was asked what the scientific methods were for determining the speed of the vehicle at the time the vehicle struck the plaintiff's decedent.

On the basis of the same objection made by the defendant-appellee, the Court sustained their objection, and the offer to prove was made that in the absence of the knowledge as to the height which the body attained from the point of im-

pact to the point where the body was found in the median between the two highways, only a minimum speed could be determined.

Thereafter, the witness was asked to state the method that is used in making this computation. The defendant-appellee again objected, and the objection was sustained, and the appellant made an offer to prove which was that the vehicle would impart to the body the same speed that the vehicle was traveling at the time of impact and that based upon trajectory, a minimum speed could be determined in order to propel a body of the weight of plaintiff's decedent to the point where it was subsequently found.

Thereafter, the witness was asked his opinion as to the speed of the defendant's vehicle at the time of the impact and when the defendant's objection was sustained by the Court, the appellant's offer to prove showed that defendant's vehicle would have been traveling in excess of 30 m.p.h.

All of the questions asked were based upon the matters which were previously introduced in evidence, the tests performed by the witness, and his knowledge and experience in this particular field of endeavor.

The record is very clear that Loren Ayres is a highly qualified accident reconstruction expert. In determining the proper guidelines for the admission and exclusion of this type evidence it is helpful to examine recent judicial history pertaining to it in Indiana.

In *Presser* v. *Shull*, 133 Ind. App. 553, 181 N. E. 2d 247 (1962) and in *Lee* v. *Dickerson*, 133 Ind. App. 542, 183 N. E. 2d 615 (1962), this court reversed a trial court for permitting an investigating police officer to testify as an expert by giving an opinion which went beyond his personal knowledge from an investigation at the scene. This proffered opinion evidence was in the nature of conclusions as to

the cause and responsibility for the accident. In *Lee,* 133 Ind. App. at page 552, this court stated:

> "The questions asked clearly invaded the province of the court and jury. It is the duty of the trial court and not the witness to advise the jury as to who should have yielded the right of way in the instant case. It is also a function of the court to instruct the jury as to the duty of the parties involved in the accident in question. It is the duty of the jury to take the evidence presented, apply the law, and determine whether or not there was any improper driving on appellee's part and whether appellant should recover damages."

In *Presser,* 133 Ind. App. at page 562, this court stated:

> "We are of the opinion that the court below committed prejudicial error in permitting appellee's witness, Officer Jarrett, to express, as an expert witness, a conclusion concerning a question of fact that could have been determined by an ordinary non-expert witness, or might have been determined by the jury based upon eye-witness testimony concerning the point of impact. It is apparent from the testimony of various witnesses and the parties to this action that there was a serious conflict in the evidence concerning whether or not the car of appellee was coming toward the Presser car from the center lane or if it was coming in the north lane immediately prior to the collision."

More recently in *McDonald* v. *Miller,* 143 Ind. App. 606, 242 N. E. 2d 39 (1968), and in *Briney* v. *Williams,* 143 Ind. App. 691, 242 N. E. 2d 132 (1968), reversals were predicated on the admission of similar evidence.

Our last word on the subject is *McCraney* v. *Kuechenberg,* 144 Ind. App. 629, 248 N. E. 2d 171, 173 (1969), where Judge Sullivan, speaking for this court, stated:

> "Appellant's first contention relates to the refusal of the trial court to permit a deputy sheriff who was not an eye-witness to give an opinion as to the speed of defendant's automobile at the time of the collision.
>
> Not unaware of our holdings in Briney v. Williams (1968), Ind. App., 242 N. E. 2d 132; McDonald v. Miller

(1968), Ind. App., 242 N. E. 2d 39; and Presser v. Shull (1962), 133 Ind. App. 553, 181 N. E. 2d 247, we nevertheless do not here hold that law enforcement officers cannot be qualified by training, experience, or both, so as to properly testify concerning their opinions in various facets of accident investigation or reconstruction. See generally, Rimco Realty & Investment Corp. v. LaVigne (1943), 114 Ind. App. 211, 50 N. E. 2d 953; 13 I. L. E. Evidence §§ 254 and 291; nor do we here rule upon the question of admissibility of opinion evidence by a non eyewitness relative to speed under circumstances different than here presented. See generally, Kuhn v. Stephenson (1928), 87 Ind. App. 157, 161 N. E. 384; Lake Erie & Western R.R. Co. v. Moore (1912), 51 Ind. App. 110, 97 N. E. 203; and Rump v. Woods (1912), 50 Ind. App. 347, 98 N. E. 369. In a proper case such evidence might well be admitted and left to the trier of fact to weigh in the light of all other evidence upon that issue. We do hold, however, that exclusion of the witness' opinion was proper here.

The specific question put to the witness was as follows:

'Do you have an opinion based on the skid marks, the evidence that you have observed at the point of impact, your experience as a police investigator as to whether or not this woman was exceeding the speed and if so what speed was she going at?'

Appellee's objection to the question was that:

'There is no basis for such an opinion to be given by this officer as an expert's opinion.'

It is appellant's contention that exclusion of this deputy's testimony was erroneous because all the evidence showed him to be a competent expert and because appellee-defendant did not negate by her own evidence or by cross-examination the 'prima facie' showing of competence and qualification. In this regard, suffice it to say that the burden of establishing the qualifications of a witness in order to permit him to testify as an expert is upon the party seeking to have such evidence admitted. It is not the burden of the adversary to prove that said witness is not qualified. 31 Am. Jur. 2d, Expert & Opinion Evidence, § 31. Further, whether any such witness is qualified to testify as an expert is for the determination of the trial court whose decision will be set aside only where there is a manifest abuse

of discretion. Chicago & Erie R. Co. v. Monesmith (1941), 110 Ind. App. 281, 37 N. E. 2d 724.

To accept appellant's contention would require us to hold that a deputy sheriff with eight years law enforcement experience, only three of which were devoted to accident investigation, is, as a matter of law, qualified to testify as an expert upon the speeds of motor vehicles under any and all circumstances. We cannot and will not do so. See Indiana Union Traction Co. v. Hiatt (1916), 65 Ind. App. 233 at 248, 114 N. E. 478, 115 N. E. 101.

Appellant did not address himself to the related but distinct question of the foundation laid for the question posed despite the fact that appellee's objection was thus confined, in that it was directed solely to the 'basis for such opinion.' Compare Carthage Turnpike Co. v. Andrews (1885), 102 Ind. 138, 1 N. E. 364.

Whether a witness' sources of information are sufficiently reliable to warrant reception of an opinion is for the trial court in the exercise of its discretion to determine and we hold that the admissibility of such opinion is necessarily dependent upon the laying of a proper factual foundation. Western & Southern Life Ins. Co. v. Danciu (1940), 217 Ind. 263, 26 N. E. 2d 912, 27 N. E. 2d 763; Whittaker v. VanFossan (4th Cir. 1961) 297 F. 2d 245; Ross v. Newsome (5th Cir. 1961) 289 F. 2d 209; Chesapeake & Ohio Ry. v. Schlink (6th Cir. 1960) 276 F. 2d 114; 32 C.J.S. Evidence § 546 (63). The question posed to the witness here did not include sufficient physical facts to justify an opinion as to speed by any non eye-witness, expert or otherwise. Nor did the prior evidence establish such physical facts.

In the case before us the witness' testimony prior to the proffered opinion dealt with his knowledge subsequent to the accident concerning weather and road conditions, degree of darkness, presence of skid marks and debris, distance from such debris where the automobile was found at rest, the apparent distance that plaintiff-appellant's ward was thrown by impact and the portions of the vehicle which were damaged.

There are other relevant factors indispensable here to a probative opinion on speed. Such factors may include, but are not necessarily restricted to, the weight and load of the vehicle as well as its condition and that of its brakes and tires. See Whittaker v. Van Fossan, supra, and Ross v. Newsome, supra. Even if the officer were competent

to render an opinion as to speed such opinion would not be admissible if he failed to take into account every factor essential to the formulation of that opinion. The specific question posed to the officer here, even when coupled with his prior testimony, lacked the requisite physical elements or foundation to allow any opinion, expert or otherwise concerning speed."

The Appellant lays much stress on the suggestion in *McCraney* that in a proper case certain expert opinion evidence might be admissible. In this case there is no question as to the qualification of Loren Ayres as an expert. This was conceded by Appellee in oral argument. The objection to his testimony went to its legal competancy. There is no question here relating to the form of the questions or the relevancy of such evidence to the issues here. There is no question that a proper foundation was laid.

The trial judge was no doubt cautious in his ruling on this evidence as a result of the decisions of this court in *Presser, Lee* v. *Dickerson, Briney* v. *Williams* and *McDonald* v. *Miller.*

We cannot as a matter of law reverse the trial court for excluding the testimony of Loren Ayres in light of the reasoning and result in the above cited cases. In this case the trial court could have exercised his discretion and admitted the offered evidence without suffering reversal.

The trial court refused to take judicial notice of Document No. 174 at page 454 of American Jurisprudence Desk Book for Attorneys which is a chart for stopping distances. The Appellant relies primarily on *Samuel-Hawkins Music Co.* v. *Ashby,* 246 Ind. 309, 204 N. E. 2d 679 (1965). *Samuel-Hawkins* is not authority which would require the trial court to take judicial notice of Document No. 174 and it was not reversible error for the trial court to so refuse.

In *Fletcher Savings and Trust Co.* v. *American State Bank of Lawrenceburg,* 196 Ind. 118, 147 N. E. 524 (1924), our Supreme Court stated:

"The procedure, suit, or action sought to be relied upon by the party seeking the relief for a finding in its favor, even though it be a proper matter of evidence to consider in reaching a finding, will not be subject to judicial knowledge without its formal introduction in evidence. Grusenmeyer v. City of Logansport (1881), 76 Ind. 549; LaPlante v. Lee (1882), 83 Ind. 155; Haaren v. Mould (1909), 144 Iowa 296, 122 N.W. 961, 24 L.R.A. (N.S.) 404; Wharton, Law of Evidence, (3d ed.) § 326; Bank of Montreal v. Taylor (1899), 86 Ill. App. 388; Bond v. White (1880), 24 Kans. 45; Anderson v. Cecil (1897), 86 Md. 490, 38 Atl. 1047; Ladd v. Bean (1920), 119 Me. 377, 111 Atl. 428.

It may be stated as a general rule that a trial court will not take judicial notice in deciding one case, of its own records in another and distinct case. Matthews v. Matthews (1910), 112 Md. 582, 77 Atl. 249, 29 L.R.A. (N.S.) 905; Streeter v. Streeter (1867), 43 Ill. 155; Murphy v. Citizens Bank (1907), 82 Ark. 131, 100 S.W. 894, 11 L.R.A. (N.S.) 616, 12 Ann. Cas. 535; Abbot, Proof of Facts (3d ed.) p. 641; Commonwealth, ex rel., v. Ball (1923), 277 P. 301, 306, 121 Atl. 191, 29 A.L.R. 626. See the case: Thayer v. Honeywell (1898), 7 Kans. App. 548, 51 Pac. 929.

The courts have even gone so far as to hold that a trial court cannot take judicial notice of its own records in another case between the same parties. Matthews v. Matthews, supra; Pacific Iron & Steel Works v. Goerig (1909), 55 Wash. 149, 151, 104 Pac. 151.

And, in some jurisdictions, judicial knowledge will not be taken by a court of its own records in a different case between the same parties and in relation to the same subject-matter. Oliver v. Enriquez (1911), 16 N. M. 322, 117 Pac. 844, Ann. Cas. 1913A 140; Murphy v. Citizens Bank, supra, Banks v. Burnam (1875), 61 Mo. 76; See Commonwealth v. Hill (1853), 11 Cush. (Mass.) 137; In re Bennett (1897), 84 Fed. 324.

The trial court, even though the facts were offered in evidence which appellee claims supported finding No. 19, dispensed with the formal proof of such facts, and seeks to take judicial knowledge of the very facts, proof of which it refused. It has been held that a trial court cannot dispense with the formal proof of the records in another action and then take judicial knowledge of the fact that certain matters were adjudicated in such case. It is, therefore, held that judicial notice could not be resorted to by the trial court to sustain its finding No. 19, and such finding was not sustained by sufficient evidence. The action of

the trial court in overruling appellants' motion for a new trial was error."

This case is nowhere near as strong a case for judicial notice as *Fletcher Savings*.

From a careful examination of the briefs and transcripts we find no errors warranting a reversal of this case. Therefore, the decision of the trial court should be and hereby is affirmed. Costs v. Appellant.

Hoffman, P.J. and Pfaff, J., concur.

White, J., Dissents without opinion.

NOTE.—Reported in 259 N. E. 2d 450.