NATIONAL CITY LINES, INC. ET AL. *v.* HURST, ADMX.

[No. 368A41. Filed September 11, 1969. Rehearing denied October 9, 1969. Transfer denied December 16, 1969.]

*Roland Obenchain, Jr.,* of South Bend, for appellants.

*Myron J. Hack,* and *Alexander Lysohir,* of South Bend, for appellee.

HOFFMAN, J.—The central issue presented by this appeal is whether the doctrine of "last clear chance" relative to the facts of this case was properly presented to the jury.

The facts most favorable to the appellee are as follows:

In the late afternoon of June 24, 1963, appellee's deceased husband walked from a bar to the nearby intersection of Meade and Linden Streets in South Bend, Indiana, to await the last bus to Mishawaka, Indiana.

The decedent was heavily intoxicated at the time and, according to several witnesses, was "staggering" and "wobbly." Tests made by the State Police laboratory established the level of alcohol in the bloodstream at .34 per cent. The decedent waited some 20 minutes on the corner for the bus. During this period his actions were observed by numerous witnesses who were inhabitants of the surrounding houses. The testimony of these witnesses was substantially the same and showed that the decedent appeared to be 1) weak; 2) coherent; 3) not "ill" or "vomiting"; 4) staggering; 5) not obnoxious; 6) not violent; and 7) waiting for the bus.

By his deposition, Sergeant Ray H. Thompson, Jr., of the Indiana State Police, testified that he made the intoxication report. He further testified that the level of alcohol in the decedent's bloodstream would positively indicate that he would be physically unstable and noticeably so.

The bus, which was the instrumentality responsible for decedent's death, approached the corner where the decedent was waiting and stopped to discharge a passenger from the rear door. Decedent approached the front door. The driver did not open the door. The decedent beat on the door with his fists. The driver began to pull away. Decedent chased the

bus, running alongside and beating on the door with his fists. The bus continued across the intersection very slowly. Decedent stumbled and fell beneath the rear wheels of the bus and his skull was crushed, causing his immediate death. The driver continued on.

The driver testified that he had, in fact, observed the decedent as he (the bus driver) approached the bus stop, but his testimony placed the decedent some two or three houses away from the bus stop. He also testified that the decedent seemed to be "staggering" and "wobbly." The driver denied seeing the decedent at the front door of his bus or hearing the decedent pound on the front door with his fists.

Appellants' specifications of error are enumerated in the summary of argument section of their brief. The summary of the argument section, in its entirety, is as follows:

> "Under Indiana law the Last Clear Chance Doctrine is not available to excuse the plaintiff's decedent of a defense of contributory negligence unless the defendants' operator actually knew of the decedent's peril and his inability to extricate himself therefrom and had reasonable opportunity in the exercise of ordinary care to avoid the decedent's death after such peril was discovered.
>
> "In this case there was no credible evidence having probative value from which the jury could find or infer the necessary facts to make the Last Clear Chance Doctrine applicable. So the trial court erred (1) *in submitting the issue to the jury in the first place, and,* (2) *instructing them on the Last Clear Chance Doctrine in the second place.*" (Our emphasis.)

The two specifications emphasized above follow appellants' assignment of errors, particularly as to the standard of review available to this court. Appellants assign as error that there was insufficient evidence to support the decision of the trial court and that the decision was contrary to law. Point One in the summary of argument hinges on a determination of whether or not sufficient competent evidence was introduced to satisfy the court that the issue of "last clear chance" should be submitted to the jury. Point Two in the summary of argu-

ment relates to the substantive legal test stated in the instruction to the jury on the doctrine of "last clear chance."

The controversy stems chiefly from the giving of Plaintiff's Requested Instruction No. 8, which was as follows:

## "PLAINTIFF'S REQUESTED INSTRUCTION NO. 8

"As a general rule, negligence on the part of the plaintiff to an action, or, as in this case, upon the part of a plaintiff's decedent, which contributes to his own injury or death will be a complete defense in those instances where it has been proved by a preponderance of all the evidence.

"However, there is an exception to this rule. This is known as the Doctrine of Last Clear Chance. This doctrine holds that the plaintiff's original negligence is excused and is held not to be a proximate cause of the plaintiff's injuries. The elements of a situation to which this doctrine applies are:

"First: Both plaintiff and defendant are negligent;

"Second: Plaintiff is in a position of peril from which he cannot extricate himself;

"Third: Thereafter, the defendant discovers or becomes aware of the plaintiff's position of actual or imminent peril, and has the time and means to avoid the injury or damage but negligently fails to exercise ordinary care to do so; and

"Fourth: The defendant's failure to do so proximately results in injury to the plaintiff.

"If you find that these elements have been proved in the case now on trial, then the original negligence of the plaintiff's decedent will not defeat a recovery."

We are faced with two problems relative to this instruction: 1) Is the instruction a proper statement of the doctrine of last clear chance; and 2) was the evidence sufficient to support a finding based on these elements?

There has been a considerable volume of work done on the doctrine of last clear chance by this court over the last several decades. The latest definitive work on the subject is the case

of *Bayne* v. *Turner,* 142 Ind. App. 580, 236 N. E. 2d 503 (1968), (Transfer denied). In that case this court, at page 506 of 236 N. E. 2d, in reviewing the holding of *Stallings* v. *Dick,* 139 Ind. App. 118, 210 N. E. 2d 82 (1965), said:

> "The essential elements of last clear chance, as stated in the *Stallings* case, are as follows: (1) plaintiff must be in a position of peril; (2) defendant must have actual knowledge of plaintiff's peril; (3) defendant must have a later opportunity than the plaintiff to avoid the injury; (4) plaintiff must, if possible, extricate himself from his position of peril."

The limits of the doctrine are narrow, and this is as it should be. It is intended to be limited to that special class of cases where, as was said in *Indianapolis Traction, etc. Co.* v. *Croly,* 54 Ind. App. 566, 587, 96 N. E. 973 (1913), (Transfer denied), ". . . their chances are equal, but the motorman [defendant] actually possesses the knowledge of the danger and appreciates the necessity of taking steps to avoid the injury, while the person injured has no actual knowledge of his danger, and does not appreciate the necessity of taking steps to avoid it."

This limited scope may be, again, summarized prospectively as follows: 1) The defendant had actual knowledge of the plaintiff; 2) The defendant knew of the plaintiff's perilous position; 3) The defendant had physical control over the instrumentality and had the last opportunity through the exercise of reasonable care to avoid the injury; and 4) The plaintiff was oblivious to his own danger, notwithstanding his own contributory negligence. See: *Lewis* v. *Mackley,* 122 Ind. App. 247, 99 N. E. 2d 442 (1952), (Transfer denied); *Lee, etc.* v. *Dickerson,* 131 Ind. App. 422, 171 N. E. 2d 698 (1961); *Stallings* v. *Dick, supra; Ewing* v. *Biddle,* 141 Ind. App 25, 216 N. E. 2d 863 (1966).

We believe the foregoing to be an accurate statement of the doctrine as it is currently presented by the applicable cases

in this State and, in light of this, we hold the instruction was a fair representation of the doctrine and was not erroneous.

Appellants raise a consideration relative to points one and two of the foregoing analysis. They suggest that "actual" knowledge of both the decedent and his peril on the part of the defendant must be determined on an objective basis, and they further submit that since the defendant denied seeing the decedent outside his door, or running alongside his bus, that that precludes an objective determination of his "actual" knowledge. They further suggest that this implies that a test of "should have known of the decedent and his peril" was employed. We cannot agree with this line of reasoning.

The fact is that "actual" knowledge, like "premeditation" in criminal actions, is very seldom admitted by a defendant in a civil action, and thus the question is quite often left to the subjective determination of the jury, to be imputed by a preponderance of evidence. Thus, the question is not whether the defendant confessed "actual" knowledge, but instead, whether there was sufficient evidence to justify the jury in finding by a subjective imputation that the defendant had "actual" knowledge.

In a review of the evidence in the record before us, we find there was more than sufficient evidence to impute to the driver actual knowledge of 1) the decedent, 2) his peril, and 3) his apparent incapacity.

In his deposition, the bus driver testified as follows:

"Q  Did you see anyone at all on the sidewalk?

"A  Yes, I did.

"Q  Will you describe what you saw?

"A  As I was pulling up to the corner of Meade and Linden, I noticed a man that was staggering on the sidewalk.

\*  \*  \*  \*  \*

"Q  Well, describe what you did as you pulled up to the stop.

"A  I saw a man staggering over on the sidewalk.

"Q  What way was he facing as you pulled up to the stop?

"A  I would say it was east."

This testimony clearly establishes that the driver was aware of the decedent and was aware that he was under some incapacity.

Further, substantially every witness testified that the decedent was beating on the front door of the bus.

Sharon Allen, on direct examination, testified as follows:

"Q   Then what did you see next?
"A   The lady got out the back of the bus and then the man wouldn't let him on or something, the man wouldn't let him on, and he started pounding on the door, and the next thing I saw is that he went up under the thing, under the bus."

Mack Allen, on direct examination, testified as follows:

"Q   Then what did you see next?  Did you see the man?
"A   Yes.
"Q   What did he do?
"A   He was banging on the door on the bus, knocking on the door of the bus.
"Q   Did he say anything?
"A   No.
"Q   He didn't say anything at all?
"A   No.
"Q   And then what happened?
"A   The bus driver said something, I don't know what it was, the bus driver said something, but I couldn't hear.
"Q   Then what happened?
"A   Then the bus started driving away.
"Q   And then what did the man do?
"A   He was running alongside of the bus."

Alvin Gene Phillips, on direct examination, testified as follows:

"Q   Where did the bus pull up in the road there, do you remember?
"A   Close to the curb, away kind of close to the curb.

"Q And then what happened?

"A The bus started to pull away, and the man started beating on the door, and then he started running alongside of it.

"Q And then what happened?

"A Got about to the other side of the street, then he just slipped or fell or something."

There was more testimony to the same effect.

It is, or should be, apparent to a reasonably prudent person that when someone who is known to be suffering from some incapacity, is running alongside of a multi-ton bus pounding on the door with his fists, a situation exists which is inherently dangerous. The duty of the bus driver in such a situation is clear—reasonable care should be taken to avoid the potential accident. No such care was taken here. The driver could have avoided the accident as the possessor of the "last clear chance." The instruction was proper according to our criteria. The record before us discloses that this was an appropriate case for the doctrine of last clear chance to be submitted to the jury.

Appellants argue several other points in the argument section of their brief, however, there is a substantial failure of compliance with Rule 2-17 (h), Rules of the Supreme Court of Indiana, and thus we shall not here discuss them. See: *Patterson* v. *State,* 251 Ind. 580, 244 N. E. 2d 221 (1969).

For the foregoing reasons, we hold that there was no error in either the submission of the issue or the form of the instruction and, therefore, the judgment of the trial court must be affirmed.

Judgment affirmed. Costs taxed against the appellants. Pfaff, C.J., Sharp and White, JJ., concur.

NOTE.—Reported in 250 N. E. 2d 507.