**Charles ROGGOW, Plaintiff–Appellant,**

v.

**MINERAL PROCESSING CORP., NEEDMORE PROCESSING DIVISION, Defendant–Appellee.**

No. 88–3282.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1989.

Decided Jan. 29, 1990.

Stephen C. Halpern, Harry F. Mooney (argued), Moot & Sprague, Buffalo, N.Y., for plaintiff-appellant.

William H. Kelley, Joseph D. O'Connor, III (argued), Bunger, Robertson, Kelley & Steger, Bloomington, Ind., for defendant-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

This personal injury suit is in federal court on diversity grounds—the appellant, Charles Roggow, is a citizen of New York and the appellee, the Needmore Processing Division of Mineral Processing Corp. ("Needmore"), an Indiana corporation.

Roggow is a trucker by profession and in February 1986 he logged a run from New York to Indiana hauling a load of scrap aluminum. Arriving at Needmore, he unhitched his full trailer and traded it for an empty one, to drive back east. Open trailers are typically equipped on top with a piece called a header bar, which fastens the tarp over a load and keeps it from flapping in the wind. On the trailer Roggow picked up at Needmore the header bar was out of place, and because he could not reach high enough to fix it by himself, Roggow asked for help. A Needmore employee, Tracy Phillips, lifted Roggow in the bucket of a highloader, putting him level with the top of the trailer, and Roggow fixed the header bar from there. As Phillips started to lower the bucket to bring Roggow back down, however, he caught his sleeve on the dump lever and the bucket flipped, dropping Roggow nine feet straight down onto a concrete floor.

Roggow suffered two fractured wrists and two fractured lumbar vertebrae from the fall. He sued and the case was tried to a jury, with Magistrate Endsley presiding. The parties stipulated that the proceedings before Magistrate Endsley would be final for purposes of appeal.

After hearing the evidence, the jury fixed total damages at $80,000, but by application of Indiana's comparative fault act, Ind.Code § 34–4–33–1, et seq., limited Roggow's award to $48,000 (sixty percent of the 80,000), on a finding that the accident was forty percent his fault. Roggow filed a motion for a new trial, which was denied, and now appeals.

I

■ Roggow presses four theories on appeal, three relating to tendered jury in-

[*] The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

structions and one concerning the adequacy of the damages award. The first is that the magistrate erred when he refused to instruct the jury on the doctrine of last clear chance. Effective in 1985 Indiana became a comparative fault jurisdiction, adopting what is called the "modified approach" (fault is compared unless the plaintiff is more than fifty percent to blame), and Magistrate Endsley explained, in denying Roggow's motion for a new trial, that last clear chance ceases to be a viable doctrine when contributory negligence is abandoned. That is the majority position. *See* W. Prosser and R. Keeton, *The Law of Torts*, § 67 at 477 n. 82 (5th ed. 1984 and Supp.1988), listing more than a dozen jurisdictions that have abolished last clear chance since adopting comparative fault. *But see also Macon v. Seaward Construction Co.*, 555 F.2d 1 (1st Cir.1977) (N.H. law), for an example of a jurisdiction that has held to the doctrine of last clear chance, even after abandoning contributory negligence in favor of comparative fault. Roggow argues that whatever the majority trend may be, last clear chance survived Indiana's adoption of comparative fault. No Indiana court has yet taken a position either way. And, fortunately, there is no need for us to either. This is factually not a case of last clear chance.

The classic last clear chance scenario is probably the case of a drunk sleeping on the tracks. Comes the train. The engineer spies the drunk well in advance but negligently fails to stop in time. All the circumstances of the tragedy—drunk asleep on the tracks, train approaching—are established even before the engineer acts (or fails to). Thus, the engineer has and misses an opportunity to avoid a disaster that is already actual or imminent. That is a very different case, however, than this one. Roggow voluntarily went up in the bucket. If all had gone smoothly, then Phillips would presumably have lowered the bucket, gingerly, and Roggow would have made it back to the ground without accident. That is, there was nothing actual or imminent about what happened to Roggow until Phillips accidentally caught his sleeve. Before that moment, Roggow simply was nine feet off the ground, and his position was no different than if he had been nine feet up in an elevator or a cherry picker. He was not in actual or imminent danger and consequently, Phillips' negligence—though clearly a cause of the injury, and a proximate one—had nothing to do with failing to avoid an accident that was already in the offing. That the jury was not instructed about the law of last clear chance was not error; this simply was not a last clear chance case. And that is true whether or not last clear chance is still a viable doctrine in Indiana. *See National City Lines, Inc. v. Hurst*, 145 Ind.App. 278, 250 N.E.2d 507 (1969) (for the defendant to have the last clear chance under Indiana law, the plaintiff must already be in a position of peril even before the defendant compounds the danger with his own negligence).

■ Roggow's second argument concerns the magistrate's refusal to give an instruction on "intervening and superseding causes." The usual purpose of such an instruction is to relieve defendants of liability where their negligence, though a factor in the plaintiff's injury, is superseded by a later cause of independent origin. *See* Prosser and Keeton, *The Law of Torts*, § 44. Roggow is the plaintiff and there is no evidence of action by a third person or independent force. We take it, then, that what Roggow means to suggest is a slight variation on the usual case, an instruction to the jury that it could conclude that he bears no responsibility for his accident because his own negligence, if any, was superseded by Tracy Phillips'.

Our duty is to determine "in a common sense manner ... whether the correct message was conveyed to the jury reasonably well," *Wilks v. AMA*, 719 F.2d 207, 218 (7th Cir.1983); and we should not reverse a decision either to give or to deny any particular instruction unless, "considering all the instructions, the evidence and the arguments," it appears that "the jury was misled ... [and its] understanding of the issues was seriously affected to the prejudice of the complaining party." *Simmons v. Pinkerton's, Inc.*, 762 F.2d 591, 597 (7th Cir.1985). While Roggow asked for a sepa-

rate instruction on intervening cause, the comprehensive proximate cause instruction the magistrate gave covered much the same ground as the one Roggow tendered. Roggow's instruction read as follows:

... an intervening cause ... means not a concurrent and contributing cause, but a superseding cause, which is itself the natural and logical cause of the harm or the immediate and direct cause of the injury; and where the cause of an injury (or death) is the negligent act of an independent, responsible intervening agency, such act must be regarded as the proximate cause thereof and the original negligence considered as only the remote cause.

Plaintiff's Requests to Charge, No. 4, Appellant's Appendix at 71. The instruction Magistrate Endsley actually gave, on the other hand, included language stating that:

... proximate cause means that cause which, *in natural and continuous sequence, unbroken by any efficient intervening cause*, produces the injury ...

Final Instruction No. 13, Record at 244. (Emphasis added). After reviewing Roggow's instruction and the magistrate's, together with Roggow's counsel's closing argument, we conclude that the message to the jury on causation was both correct and complete.

■ Roggow argues, next, that the jury should have been instructed about Needmore's duty of due care. He wanted the jury to hear that:

With respect to issues of negligence and contributory negligence the Plaintiff had a right to assume that the Defendant would exercise due care in the Defendant's conduct toward him until Mr. Roggow had notice to the contrary. Mr. Roggow was not required to anticipate the negligence of the Defendant, if any.

Plaintiff's Requests to Charge, No. 7, Appellant's Appendix at 73. That language is superfluous. The jury was told that Needmore had a duty to act with due care. Final Instruction No. 2 included as an element:

(c) that the defendant allowed and encouraged plaintiff to enter a high-loader for the purpose of repairing his trailer *and that the defendant's employees failed to use due care in the operation of the high-loader.*

Record at 238–39. (Emphasis added). And Final Instruction No. 10 stated that:

[n]egligence, *either on the part of the plaintiff or the defendant*, is the failure to do what a reasonably careful and prudent person would have done under the same or like circumstances.

Record at 242–43. (Emphasis added). There was no need to instruct the jury in addition that Roggow "had a right to assume" that Needmore would live up to its duty (or vice versa). The degree of care required of Roggow himself would not have varied one way or the other with that assumption, and it was not error to refuse his tendered instruction on due care.

■ Roggow's last argument has to do with the size of the award. He does not challenge the jury's apportionment of fault—forty percent his, sixty percent Needmore's. Instead, he attacks the jury's findings that total damages came to $80,000 and no more, and moves for a new trial.

Federal not state law standards govern motions for a new trial, *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir.1983), and the law in this circuit is that disposition of the motion is addressed to the discretion of the trial court, *Galard v. Johnson*, 504 F.2d 1198, 1199 (7th Cir.1974). Our review of the trial court's exercise of that discretion—in this case, of Magistrate Endsley's refusal to set aside the jury's verdict on damages—is extremely limited. We view damages evidence in the light most favorable to the verdict, *Lippo v. Mobil Oil Corp.*, 776 F.2d 706, 716 (7th Cir.1985), and will not reweigh it unless there is no evidentiary basis for the verdict, *U.C. Casings Co. v. Knight*, 754 F.2d 1363, 1369 (7th Cir.1985), no rational connection between the evidence presented and the figure the jury reached. Roggow and Needmore stipulated before trial that Roggow's reasonably incurred medical expenses totaled $20,661.79. There was conflicting evidence at trial as to Roggow's need for future

treatment and, in fact, as to the continuing extent, if any, of his injuries. On lost wages, there was evidence that he had lost between forty and fifty-eight thousand dollars, but Magistrate Endsley called that evidence "speculative." The magistrate also noted that there was nothing in the verdict to suggest passion, prejudice, or gross mistake on the jury's part. Against that background, we conclude that there is evidence to support the jury's figure of $80,000. We note, as well, that the sum of $20,661.79 for medical expenses plus even the maximum $58,000 for lost wages is less than the jury's figure of $80,000. We find no abuse of discretion and there is no reason for a new trial on damages.

The decision below is affirmed.