908 F.2d 218
 134 L.R.R.M. (BNA) 3082, 116 Lab.Cas. P 10,242
 James BASSETT, Aaron Kesner, and David Waszkowski,
Plaintiffs-Appellants,
v.
LOCAL UNION NO. 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
Defendant-Appellee.
 No. 89-2295.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 17, 1990.
Decided July 27, 1990.
 
 Robin B. Potter, Potter & Schaffner, Chicago, Ill., for plaintiffs-appellants.
 David Mathews, Carmell, Charone, Widmer, Mathews & Moss, Chicago, Ill., for defendant-appellee.
 Before CUMMINGS and KANNE, Circuit Judges, and SNEED, Senior Circuit Judge.*
 CUMMINGS, Circuit Judge.
 
 
 1
 The plaintiffs are three former employees of Glendenning Motorways, Inc. ("Glendenning"), an interstate trucking firm, who were also former members of Local Union No. 705 of the International Brotherhood of Teamsters ("Local 705"). On March 22, 1983, they sued Glendenning and Local 705, alleging violations of Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. Shortly thereafter, defendant Glendenning filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Minnesota, and was ultimately dismissed from this action on plaintiffs' motion. The plaintiffs continued the suit against Local 705, alleging a breach of the union's duty of fair representation in processing their grievances against Glendenning.[1] On July 16, 1984, the district judge granted the defendant's motion for summary judgment on the ground that the plaintiffs had failed to exhaust internal union remedies. Bassett v. Local Union No. 705, No. 83 C 1988 (N.D.Ill. July 16, 1984). The defendant's earlier motion for judgment on the pleadings on the same ground had been denied. Bassett v. Local Union No. 705, No. 83 C 1988 (N.D.Ill. October 25, 1983).
 
 
 2
 The plaintiffs appealed the dismissal, contending, among other things, that available union remedies were inadequate to grant them full relief. Bassett v. Local Union No. 705, 773 F.2d 932, 935 (7th Cir.1985). This Court agreed with that contention and reversed the district court's grant of summary judgment and remanded the case for trial. Id. at 935-937. On remand Local 705 once again moved for summary judgment on the grounds that some of the plaintiffs' complaints were time-barred and that there had been no breach of the duty of fair representation. The district judge denied this motion, holding that the plaintiffs' claims were not time-barred and that the fairness of Local 705's representation was a question for the jury. Bassett v. Teamsters Local 705, 125 LRRM 3492, 1987 WL 6409 (N.D.Ill. February 2, 1987). After a 15-day jury trial the jury returned a verdict for the defendant. On May 22, 1989, the district judge denied the plaintiffs' motion for judgment notwithstanding the verdict or in the alternative for a new trial. The plaintiffs now appeal from that denial, alleging errors in jury instructions and evidentiary rulings. We affirm.
 
 I. Factual Background
 
 3
 The facts of this case have been fully set forth in the opinions cited above and need only be briefly recounted here. During the period preceding this action, Glendenning and Local 705 were parties to a collective bargaining agreement known as the Joint Area Cartage Agreement ("JACA"). Under the terms of that agreement Glendenning agreed not to subcontract any of its work to truckers operating "outside of the jurisdictional area of [Local 705]." JACA Article 13, Section 2. Article 22, Section 4 of the JACA defines the jurisdictional area of Local 705 as "a maximum of [a] seventy-five (75) mile radius from the main Post Office in Chicago, Illinois * * *."
 
 
 4
 In 1981 Glendenning began subcontracting some of its work to a company called Metro Distribution, Inc. ("Metro"). Shortly thereafter plaintiffs Bassett and Waszkowski were laid off. They filed grievances pursuant to the JACA challenging the subcontracting of this work. Under the terms of the JACA the grievances were processed by a Joint Grievance Committee ("JGC"), composed of equal numbers of Glendenning and Local 705 representatives. The JGC issued a decision on November 18, 1981, referring the matter back to the parties for settlement. The decision also stated that work previously performed by Glendenning employees should continue to be performed by them. In February 1982 Glendenning and union representatives reached a settlement ("the 1982 Settlement") prohibiting Metro from performing any work east of Highway 59 and restricting Metro's work west of Highway 59 to jobs not involving full trailer loads. This agreement ostensibly narrowed the former jurisdictional boundary contained in the JACA, since parts of Highway 59 and areas west thereof are within a 75-mile radius of the main post office in downtown Chicago.
 
 
 5
 Bassett and Waszkowski were recalled to work in January 1982, but were laid off again one month later, this time with plaintiff Kesner. The plaintiffs then renewed their complaints that the subcontracting to Metro violated the terms of the JACA. At first, Local 705 refused to consider these complaints on the ground that the matter had been resolved by the 1982 Settlement. Allegations of union animus toward plaintiff Kesner emerged during this period. Kesner apparently believed that the union was loath to press the plaintiffs' grievances since seniority made Kesner eligible for the earliest recall and Kesner believed that the union did not want him to return to work. In September 1982, however, Local 705 consolidated the plaintiffs' grievances with those of several other union members and presented them for review to the JGC. The JGC ordered an audit of the work subcontracted to Metro between November 1981 and October 1982 to determine if any of that work violated the terms of the JACA. In accordance with the terms of the 1982 Settlement, and over the plaintiffs' objections, this audit was confined to the area within the narrowed jurisdiction of Local 705. The audit report, revealing numerous violations of Glendenning's jurisdictional boundaries by Metro, was accepted by the JGC on February 9, 1983. The JGC deadlocked over the amount of damages Glendenning would have to pay to settle the grievances.
 
 
 6
 The essence of the plaintiffs' arguments at trial was that the union breached its duty of fair representation by agreeing to the narrowing of Glendenning's jurisdictional boundary. The plaintiffs further argued at trial that the failure by the union to pursue the plaintiffs' grievances aggressively was motivated by union animus toward Kesner.
 
 
 7
 The plaintiffs allege that the trial judge committed two errors during the trial. First, they contend that they should have been allowed to introduce documentary evidence of Glendenning's final contribution to the union's pension trust fund. They claim that the judge's refusal to admit this evidence prevented them from rebutting the union's contention that it could not collect damages from Glendenning on behalf of the plaintiffs because Glendenning was bankrupt. Second, the plaintiffs maintain that the jury instructions were inadequate. At the close of the case the judge instructed the jury that in order to prevail the plaintiffs had to prove, among other things, that the JGC erroneously approved the results of the Metro audit, that the plaintiffs were not reinstated and lost wages because of that erroneous approval, and that Local 705 breached its duty of fair representation during its appearance before the JGC on February 9, 1983. The judge rejected the plaintiffs' proffered jury instructions that would have required the jury to make specific findings about the union's participation in the 1982 Settlement on the ground that these instructions were subsumed in the instructions given by the court. The judge also rejected the plaintiffs' proffered jury instruction that colluding with the employer would constitute a breach of Local 705's duty of fair representation, on the ground that a separate cause of action alleging collusion was time-barred.
 
 II. Discussion
 A. Admission of Evidence
 
 8
 A district court's decision to exclude evidence at trial will not be disturbed unless it constitutes an abuse of discretion. Mayoza v. Heinold Commodities, Inc., 871 F.2d 672, 677 (7th Cir.1989); see also Cronin v. Sears, Roebuck & Co., 588 F.2d 616, 619 (8th Cir.1978) (trial court did not abuse its discretion in excluding evidence in a fair representation case). The plaintiffs were permitted to elicit testimony at trial that the union had successfully collected delinquent pension contributions from Glendenning. In addition to this testimony the plaintiffs sought admission of copies of the actual checks written to repay these delinquencies. The district court determined that the checks were "irrelevant" (Tr. at 1236) and therefore sustained the defendant's objection to their admission. This determination did not constitute an abuse of discretion. Furthermore, we agree with the defendant that even if this determination was erroneous, the fact that the plaintiffs were permitted to elicit the testimony about the payments makes the checks redundant, so that their exclusion could not have influenced the outcome of the trial. See Hamilton v. Consolidated Freightways, 612 F.2d 343, 348 (8th Cir.1979) (exclusion of plaintiff's documentary evidence in a fair representation case was not erroneous where testimony regarding substance of the documents was permitted).
 
 B. Jury Instructions
 
 9
 As this Court recently reiterated, a district court's decision either to give or to deny a particular jury instruction will not be reversed unless " 'considering all the instructions, the evidence, and the arguments [it appears that] the jury was misled * * * [and that its] understanding of the issues was seriously affected to the prejudice of the complaining party.' " Roggow v. Mineral Processing Corp., 894 F.2d 246, 248 (1990), quoting Simmons, Inc. v. Pinkerton's, Inc., 762 F.2d 591, 597 (7th Cir.1985).
 
 
 10
 The plaintiffs contend that the district court's instruction regarding the Metro audit did not adequately place their theory of the case before the jury. Considering the instructions as a whole and the evidence and arguments presented at trial, it is virtually impossible to see how the jury could have been misled. The JGC approval of the Metro audit implicitly rejected the plaintiffs' objections to the 1982 Settlement. If the JGC had believed that the 1982 Settlement's clarification of Local 705's jurisdictional boundaries was erroneous, then it could not have concluded that an audit confined to those boundaries was valid. Thus, in deciding that the JGC's approval of the Metro audit was not erroneous, the jury was also validating the outcome of the 1982 Settlement. It is undisputed that the plaintiffs were successful in persuading the union to present their grievances at the 1982 JGC proceeding that led to the Metro audit. The audit was specifically designed to redress those grievances. A decision by the jury that the audit was properly adopted amounts to a decision that the union's representation of the plaintiffs was adequate. The district court did not err in refusing to instruct the jury to make specific findings about the union's participation in the 1982 Settlement.[2]
 
 
 11
 The district court was also correct in concluding that the plaintiffs' eleventh-hour attempt to amend their complaint to add collusion as a separate cause of action was time-barred. The district court explicitly stated that allegations of collusion and union animus had been present in the case all along, but not as separate causes of action. Record at 1188. Thus even if the proposed amendment to the complaint had not been time-barred, it would have been merely cumulative. The jury did hear evidence designed to show company-union collusion and union animus, and their verdict indicates that they found this evidence unpersuasive. The trial court's refusal to draw the jury's attention to this evidence with an explicit instruction was not erroneous.
 
 III. Conclusion
 
 12
 The judgment of the district court is affirmed. Local 705's motion for attorneys' fees and double costs is denied.
 
 
 
 *
 The Honorable Joseph T. Sneed, Senior Circuit Judge of the Ninth Circuit, is sitting by designation
 
 
 [1]
 Section 301 of the Labor Management Relations Act ("LMRA") authorizes suits alleging a breach of a collective bargaining agreement. The Supreme Court has implied from the structure of the LMRA a union's duty of fair representation in handling a union member's grievance. Reed v. United Transportation Union, 488 U.S. 319, 109 S.Ct. 621, 627, 102 L.Ed.2d 665. In order to prevail in a fair representation suit in this Circuit, a plaintiff must prove that the union committed intentional misconduct. Camacho v. Ritz-Carlton Water Tower, 786 F.2d 242, 243-244 (7th Cir.1986), certiorari denied, 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571
 
 
 [2]
 The union maintains that because it was entitled to a directed verdict, the trial court's errors, if any, were harmless under Vecchio v. Anheuser-Busch, Inc., 328 F.2d 714 (2d Cir.1964), certiorari denied, 379 U.S. 831, 85 S.Ct. 60, 13 L.Ed.2d 39. We do not reach this argument since we find that there were no errors